## 1389

William Watson DAVIS, Respondent v. Doc T. HAMM, Appellant.
(387 S. E. (2d) 676)

Court of Appeals

*John C. Thompson,* of *Thompson, Henry & Gwin,* Conway, *for appellant.*

*Dennis H. Smith,* of *Smith & Klose,* Surfside Beach, *for respondent.*

Heard June 12, 1989.

Decided Sept. 5, 1989.

GARDNER, Judge:

William W. Davis (Davis) brought this action against Doc T. Hamm (Hamm) in which he alleged that Hamm, a former president of TICOA Investments, Inc., (the corporation) breached a fiduciary duty he owed to Davis, a former stockholder of the corporation, thereby depressing the value of the stock Davis subsequently sold. The matter was referred to a Special Referee with a right of direct appeal. The trial was bifurcated; the Special Referee entered final judgment by two separate orders, the first declaring that Davis had standing to sue Hamm for misappropriation of a computer used in the corporation's business and the second awarding Davis actual damages in the amount of $27,500 and punitive damages in the amount of $2,500. Hamm appeals from both orders. We reverse and remand.

## ISSUE
The sole issue we address is whether a former shareholder of a corporation has standing to maintain a direct action against an officer and director of the corporation for breach of a duty owed to the corporation.

## FACTS
The complaint in this action alleges (1) that Davis was formerly a shareholder in TICOA Investments, Inc.; (2) that at the same time Hamm was a director and the president of

the corporation; (3) that Hamm absconded with the corporation's computer system and converted it to his own use, thus causing a decrease in the assets, worth and value of the corporation and its stock; (4) that Hamm acted in breach of his fiduciary duty to the corporation and its shareholders with the intent to force Davis and the other shareholders either to sell him the controlling interest in the corporation or to sell their interests to outside isnvestors; and (5) that Davis was thereby forced to sell his shares to outsiders at a substantial loss. Davis sought $65,000 actual damages, punitive damages, and other relief.

The following relevant facts were developed at the trial of the case. Hamm was the president of the corporation on May 1, 1986, when the corporation leased a computer from Central Carolina Bank, Durham, North Carolina. Hamm gave his personal guaranty of the lease because the bank would not accept the new corporation's credit without Hamm's endorsement; Hamm in the past had done business with the bank. The corporation fell behind in the lease payments, and the bank demanded payment or return of the computer. The payment was not made. The bank made another demand, and Hamm, who no longer had authority to sign the checks of the corporation, returned the computer to the bank. For purposes of this decision, we assume that Hamm acted wrongfully in returning the computer; that the return of the computer hurt the corporation's business; and that the return of the computer and the injury to the corporation's business reduced the value of the stock of the corporation.

Davis, who was fully aware of all of the above facts, sold his stock before the institution of this action. Davis does not allege or contend that he sold his stock at a loss as a result of non-disclosure or misrepresentation on the part of Hamm.

## DISCUSSION

The appealed order denying Hamm's motion to dismiss on the grounds that Davis lacks standing to bring the action states that the issue before the court can best be understood by breaking it into two subdivisions: "(1) may a shareholder bring a direct action against a director or officer for breach of a fiduciary duty, and (2) may a former shareholder bring

a direct action against a director or officer for breach of fiduciary duty."

In developing the first query, the appealed order determined that (1) the South Carolina Business Corporation Acts of 1962[1] and 1981[2] abrogated certain principles of law announced by our Supreme Court in decisions predating the two Acts; and (2) three cases from foreign jurisdictions stand for the proposition that even though an action alleges in substance a corporate injury, it may be brought by an individual stockholder and need not necessarily be derivative in nature.

In developing its conclusion that Davis, as a former shareholder in the corporation, had standing to bring this action, the appealed order determined that (1) "[i]t is a general principle of corporate law that former shareholders, as well as current shareholders, may bring direct actions against officers and directors for breach of fiduciary duty;" (2) the case of *Dibble v. Sumter Ice and Fuel Co.*, 283 S. C. 278, 322 S. E. (2d) 674 (Ct. App. 1984) supports the proposition that an ex-shareholder might maintain an action against a former director of a corporation for misappropriation of corporate assets as alleged in the case before us; (3) certain cases from foreign jurisdictions involving suits by minority stockholders against majority stockholders support the proposition that Davis has standing to maintain this action; and (4) by implication determined that Section 33-13-150, Code of Laws of South Carolina (1976, as amended) (repealed 1988)[3], imposed a duty on Hamm which flowed to Davis under the facts of this case. As discussed below, we reject each one of these holdings.

## I.

The appealed order, erroneously we hold, rejected as ▮▮ having been statutorily abrogated by the passage of the 1962 and 1981 South Carolina Business Corpora-

---

[1] 1962 S. C. Acts 52 [codified as amended at Title 12, Code of Laws of South Carolina (1962, as amended)].

[2] 1981 S. C. Acts 146 [codified as amended at Title 33 (rev. 1987), Code of Laws of South Carolina (1976, as amended)].

[3] Repealed by the South Carolina Business Corporations Act of 1988, 1988 S. C. Acts 444, amending Title 33, Code of Laws of South Carolina (Supp. 1988).

tion Acts the well-established principles that: (1) the assets of a corporation belong to the corporation and not the individual stockholders, and (2) the liability of directors or officers of a corporation for loss to the corporation due to their mismanagement is an asset of the corporation and that any recovery on such a cause of action belongs solely to the corporation. These principles are stated in the cases of *Thompson v. Thompson,* 214 S. C. 61, 51 S. E. (2d) 169 (1948), and *Johnson v. Baldwin,* 221 S. C. 141, 69 S. E. (2d) 585 (1952). We hold that the principles of *Thompson v. Thompson* and *Johnson v. Baldwin* are sound and viable today. *See, Bradley v. Hullander,* 272 S. C. 6, 249 S. E. (2d) 486, 503 (1978); *Ward v. Griffin,* 295 S. C. 219, 367 S. E. (2d) 703 (Ct. App. 1988); *Strickland v. Flue-Cured Tobacco Co-Op,* 643 F. Supp. 310 (D. S. C. 1986).

In the case before us, the computer was admitted to be an asset of the corporation; the loss of the computer, therefore, was a loss to the corporation. If there was a cause of action because of Hamm's removal of the computer, the cause of action belonged to the corporation and not to Davis, even had he remained a stockholder. And we so hold. Any proper action brought by a stockholder would have been derivative, and we so hold. *Ward v. Griffin, supra.*

## II.

Next, the appealed order cites three cases from foreign jurisdictions for the proposition that where a close corporation is involved a plaintiff need not employ the form of a derivative action even though the action alleges in substance a corporate injury. The cases relied upon by the appealed order are *Watson v. Button,* 235 F. (2d) 235 (9th Cir. 1956); *Johnson v. Gilbert,* 127 Ariz. 410, 621 P. (2d) 916 (1980); *Dresden v. Willock,* 518 F. (2d) 281 (3d Cir. 1975). We have carefully analyzed these cases and hold that the appealed order erroneously construed their application to the case before us.

The cases cited involved corporations owned by only two parties or groups of parties and treat the parties more as joint venturers or partners than corporate holders. We recognize that there has been an evolution in the concept of minority stockholder's rights. The case before us, however,

does not constitute a proper vehicle to apply the principles of law involved in this burgeoning field of litigation between shareholders in very close corporations. For a thorough discussion of this law, the reader is referred to O'Neal & Thompson, *O'Neal's Close Corporations* Sections 1.07, 1.11, 1.14, 1.16, 1.19 and 1.20 (3rd Ed.).

Davis was not a stockholder in the corporation at the time of the institution of this case and, therefore, the principles relating to disputes between stockholders in very close corporations are not relevant to the case before us. We hold, therefore, that *Johnson v. Gilbert* and *Dresden v. Willock,* cited in the appealed order, are inapplicable to the case before us.

We observe that *Watson,* the only one of these cases involving a suit by a former stockholder, is similar to the South Carolina case of *Jacobson v. Yaschik,* 249 S. C. 577, 155 S. E. (2d) 601 (1967), in that both cases involved stock sales affected by the failure of one of the only two stockholders to disclose to the other certain facts relevant to the true value of the corporation, such failure to disclose benefitting the former at the expense of the latter.

In *Jacobson* the South Carolina Supreme Court adopted the rule, which is stated to be the minority rule of the nation, that officers and directors of a corporation, standing in a fiduciary relationship to the individual stockholders, must make a full disclosure of all relevant facts when purchasing shares of stock from a stockholder. This rule, however, has no application to the case before us in which there is no allegation of a failure to disclose relevant facts by officers and directors. The facts developed at trial, moreover, reveal that Davis knew all about the alleged misappropriation of the computer before selling his stock to an outsider. The rule set forth in *Jacobson,* although tangential, is not relevant to the case at hand. And we so hold.

*Watson* involved a sale of the corporation by both stockholders to new owners following which the plaintiff discovered that the defendant had embezzled funds from the corporation, thus decreasing its value and the value of the plaintiff's shares at the time of the sale. In affirming the trial court's denial of the defendant's motion to dismiss, the court was careful to note that corporate creditors would not

be prejudiced because the parties had agreed to be jointly responsible for the corporate debts; that there could be no danger of a multiplicity of suits or of prejudice to other shareholders' interests because the plaintiff and the defendant were the only shareholders; and that the new owners of the corporation had given up any right to assert a corporate cause of action. These elements, as well as the absence of an allegation or evidence that Hamm failed to disclose facts affecting the value of the corporation when Davis sold his shares, distinguish *Watson* from the case before us. And we so hold.

### III.

The appealed order cited *Dibble v. Sumter Ice and Fuel Co., supra,* as supporting the proposition that an ex-shareholder might maintain an action against a former director of a corporation for misappropriation of corporate assets. *Dibble* has no application to the present case. And we so hold. In the first place Dibble sued the dissolved corporation and not the director; but more importantly, *Dibble* involved the post-dissolution liability of a fraudulently dissolved corporation and the consequent inadequate compensation of one of its shareholders in the dissolution distribution. In the case before us, Davis does not allege a dissolution, and, so far as the record discloses, it appears the corporation was still in existence and doing business at the time of the institution of the action.

### IV.

The appealed order next cites a long list of cases[4] dealing with suits by minority stockholders against majority stockholders alleging oppression of the former by the latter. In all

---

[4] *Masinter v. Webco Co.,* 164 W. Va. 241, 262 S. E. (2d) 433 (1980); *Tri-City Electric Service Co. v. Jarvis,* 206 Ind. 5, 185 N. E. 136 (1933); *Fix v. Fix Material Co.,* 538 S. W. (2d) 351 (Mo. App. 1976); *Roach v. Margulies,* 42 N. J. Super. 243, 126 A. (2d) 45 (1956); *Baker v. Commercial Body Builders, Inc.,* 264 Or. 614, 507 P. (2d) 387 (1973); *Schipper Bros. Coal Mining Co. v. Economy Domestic Coal Co.* 277 Pa. 356, 121 A. 193 (1923); *Patton v. Nicholas,* 154 Tex. 385, 279 S. W. (2d) 848 (1955); *contra, White v. Perkins,* 213 Va. 129, 189 S. E. (2d) 315 (1972).

of these cases, cited to support the proposition that courts have equitable powers to fashion remedies outside the scope of dissolution statutes to aid oppressed minority shareholders, the plaintiff retained his ownership interest in the corporation and sought relief as a stockholder either in his own behalf or on behalf of the corporation. Some of these suits were brought pursuant to minority stockholder statutes similar to Sections 33-21-150 to 33-21-230, Code of Laws of South Carolina (1976, as amended);[5] such statutes provide a vehicle to relieve minority stockholders from oppression by majority stockholders. See the footnoted bibliography and comments about these actions.[6] The South Carolina statutes provide a wide range of relief for minority stockholders; it is under statutes such as these that most suits between minority stockholders and majority stockholders now have their basis. Under these statutes, in closely held corporations, a minority stockholder can maintain an action for managerial misconduct and other forms of oppression by majority stockholders. The attempt, however, by the appealed order to relate these cases to the case on hand is futile since Davis was not a stockholder when he instituted this action.

## V.

Finally, the appealed order holds that Hamm violated a duty owed Davis statutorily created by the South Carolina Business Corporation Act of 1981 which was in force at the time the facts of this case occurred.

---

[5] Repealed by 1988 S. C. Acts 444, effective January 1, 1989. Comparable provisions are new Sections 33-14-300 to 33-14-330, Code of Laws of South Carolina (Supp. 1988).

[6] See H. J. Haynsworth, "The Effectiveness of Involuntary Dissolution Suits as a remedy for Close Corporation Dissension," 35 Clev. St. L. Rev. 25 (1986-87); F. H. O'Neal, "Oppression of Minority Stockholders: Protecting Minority Rights," 35 Clev. St. L. Rev. 121 (1986-87). In the latter article, Dr. O'Neal observed:

Unfair treatment of holders of minority interests in family companies and other closely held corporations by persons in control of those corporations is so widespread that it is a national business scandal. The amount of litigation growing out of minority shareholder oppression—actual, fancied or fabricated—has grown tremendously in recent years, and the flood of litigation shows no sign of abating.

Id. at 121.

Section 33-13-150(a)[7] imposed on officers of a corporation a duty of care to discharge their duties in good faith, with prudent care, and in the reasonable belief they are acting in the best interest of the corporation and its shareholders. After careful analysis of all authority relating to the 1981 Act and its successor Act, we hold there is no liability to shareholders unless the duty asserted to have been breached flows to the plaintiff in the action, such as in the types of suits typified by *Jacobson v. Yaschik, supra,* and in actions brought by minority stockholders of close corporations pursuant to Section 33-21-150 to 33-21-230 (repealed), or their successors, Sections 33-14-300 to 33-14-330. And we are quick to point out that all of these sections deal exclusively with shareholders and not with non-shareholders as in the case before us.

## CONCLUSION

In summary, we hold that the South Carolina Business Corporation Acts of 1962 and 1981 do not negate the principles that (1) the assets of the corporation belong to the corporation and not to the stockholders individually, (2) the liability of corporate officers for misappropriation of corporate property is an asset of the corporation and as such ordinarily can be a basis of suit only by the corporation or shareholder bringing a derivative action,[8] or (3) apply to the rights of former stockholders in post dissolution suits.[9]

Davis was not a stockholder in the corporation; he was not protected by the code sections herein mentioned for the

---

[7] Repealed by 1988 S. C. Acts 444, effective January 1, 1989. New Sections 33-8-300(a) and 33-8-420(a), Code of Laws of South Carolina (Supp. 1988), provide identical standards for the conduct of officers and directors. For an excellent discussion of the ramifications of these statutes, the reader is referred to an article by Gregory B. Adams, Professor of Law of the University of South Carolina, entitled "Litigation of Corporate Law Disputes After the Recent Amendments of the Corporate Code," in *Current Issues in Civil Litigation,* a South Carolina Bar Continuing Judicial Legal Education Seminar, April 14, 1989.

[8] This rule is subject, however, to the right of minority stockholders to proceed against majority stockholders, the corporation officers and directors pursuant to Sections 33-21-150 to 33-21-230 (repealed).

[9] We perceive nothing in the provisions of the South Carolina Business Corporations Act of 1988 which would call for conclusions different than those we have reached herein.

reasons which we have set forth. Davis does not fit into any of the exceptions noted in the appealed order or mentioned above. We therefore hold that the appealed order erroneously found that Davis had standing to bring this action. Accordingly we reverse both of the appealed orders for the reasons given and remand the case for entry of judgment in accordance with this decision.

Reversed and remanded.

CURETON and GOOLSBY, JJ., concur.

