## 1607

George Mack TODD, Appellant v. Robert C. ZALDO, Respondent.
(403 S.E. (2d) 666)

Court of Appeals

*Finley B. Clarke,* of *Clarke, Johnson & Peterson,* Florence, *for appellant.*

*J. Edward Bell, III,* of *Bell & Bagley,* Sumter, *for respondent.*

Heard Jan. 22, 1991.

Decided Feb. 11, 1991.

CURETON, Judge:

This suit involves claims of fraud, breach of fiduciary duty, and unfair trade practices. George Mack Todd and Robert C. Zaldo were shareholders in Georganne Apparel Company, Inc. Zaldo owned seventy percent of the stock and Todd owned twenty-five percent. The other five percent was owned by Legrand Lyerly who is not a party to this suit. Todd served as president of the corporation and Zaldo was chairman of the board. Todd was fired in 1985. Thereafter, disputes arose between Todd and Zaldo over past management of the corporation and Todd brought a suit against Zaldo. Zaldo counterclaimed alleging slander, unfair trade practices, conversion, fraud and deceit, breach of fiduciary duty, and fraudulent inducement. The jury returned a verdict for Zaldo on the causes of action for fraud, breach of fiduciary duty, and unfair trade practices. Todd appeals the verdicts. We reverse.

In his pleadings and at appropriate stages of the trial, Todd asserted Zaldo lacked standing to bring the counterclaims because the damages sought were corporate and not individual. The trial judge denied Todd's motions for directed verdict and judgment notwithstanding the verdict on this ground as to the claims for fraud, breach of fiduciary duty, and unfair trade practices. However, he granted a directed verdict motion on the conversion claim.

Georganne Apparel Company, Inc. was formed in 1979 by Zaldo, Todd, and Legrand Lyerly to perform sewing subcontract work. Zaldo owned seventy percent of the stock, Todd owned twenty-five percent, and Lyerly owned five percent. Todd served as president of the corporation and had signature authority on the corporate checking account. He was also the plant manager. Zaldo was chairman of the board. He resided

in New York and came to the South Carolina plant several times a year.

Zaldo was also the sole stockholder of MIV Textile Sales, Inc., a wholesale manufacturer of women's lingerie. MIV Textile Sales, Inc. was the only customer of Georganne Apparel Company, Inc. for several years. MIV Textile Sales, Inc. would obtain contracts for the sale of lingerie and then subcontract with Georganne Apparel Company, Inc. for the manufacture of the garments.

In 1980 Todd and Lyerly along with several other people formed a company called Lake City Managing Company, Inc. Lake City was a manufacturer of sportswear. Georganne Apparel began performing sewing operations for Lake City. Todd also formed a textile brokerage business in 1982 called Georganne, Ltd. This company would obtain contracts for the manufacture and sale of sportswear and then subcontract these functions to sewing subcontractors such as Georganne Apparel and Lake City.

After Todd was fired as president of Georganne Apparel Company, Inc., Zaldo began reviewing the records of the company. He testified his investigation led to the discovery of losses related to mismanagement and improper conduct by Todd. These losses included (1) diversion of Georganne Apparel checks into the Georganne, Ltd. account; (2) payment of wages by Georganne Apparel to non-employees; (3) missing machinery; (4) inventory manufactured by Georganne on contract with MIV Textile Sales, Inc. which was paid for by MIV but not delivered to it; (5) nonpayment by Lake City Manufacturing for sewing services rendered by Georganne Apparel; and (6) costs incurred by Georganne Apparel for shipping Todd's personal goods. This testimony was objected to by Todd on the ground these damages were corporate damages of either Georganne Apparel Company, Inc. or MIV Textile Sales, Inc. and were not personal damages of Robert Zaldo.

Zaldo contends all of these elements of damages are personal and distinct from any corporate damages. In his testimony Zaldo characterized the damages as personal because Georganne Apparel Company, Inc. and MIV Textile Sales, Inc. were small closely held corporations and "[m]y corporation is totally my money and that is my contention...."

A corporation is a distinct legal entity. The courts of this state recognize that a cause of action for recovery of an asset of a corporation belongs to the corporation as opposed to the individual shareholders. *Johnson v. Baldwin*, 221 S.C. 141, 69 S.E. (2d) 585 (1952); *Bradley v. Hullander*, 272 S.C. 6, 249 S.E. (2d) 486 (1978); *Ward v. Griffin*, 295 S.C. 219, 367 S.E. (2d) 703 (Ct. App. 1988). If an individual stockholder has suffered a particular loss due to mismanagement of a corporation then the stockholder may bring an action for his loss since it is his personal asset. But, this loss must be personal and not a loss of the corporation. *Ward*, 295 S.C. 219, 367 S.E. (2d) 703.

Mere characterization of damages by Zaldo as personal versus corporate does not prove their true nature.

Zaldo was doing business in the corporate form through Georganne Apparel Company, Inc. and MIV Textile Sales, Inc. There is no indication in the record the companies operated as *de facto* sole proprietorships or partnerships. Further, the categories of claimed damages are clearly corporate in nature. Checks payable to Georganne Apparel Company, Inc. belong to the company and not Mr. Zaldo. Wages to employees are a company obligation and are recoverable by the company if paid to non-employees. The missing inventory belonged to MIV Textile Sales Inc. as a business entity. Any missing machinery is an asset of Georganne Apparel Company, Inc. The right to receive payment for services rendered by Georganne Apparel Company, Inc. is an asset of the company and not an asset of an individual shareholder although he owns the majority of its stock. Finally, the right to recover costs paid by Georganne Apparel to ship Todd's personal goods belongs to the corporation, not Zaldo individually. None of these items is an asset of Mr. Zaldo although he may view the companies as his alter ego.

Zaldo next argues he may recover these damages because he was a creditor of Georganne Apparel Company, Inc. as well as a stockholder. A 1982 financial statement of the company indicates note payable to Zaldo of approximately $160,000. A December 1980 financial statement exhibits notes payable of approximately the same amount. The record does not demonstrate this financial obligation was incurred as a result of misrepresentations or tortious acts of

Todd. See *Sutter v. General Petroleum Corp.*, 28 Cal. (2d) 525, 170 P. (2d) 898 (1946) (fraudulent inducement to invest in corporation). Additionally, Zaldo argues he was a competitor of Lake City Manufacturing and therefore has standing to recover damages. Any competitor of Lake City Manufacturing was MIV Textile Sales, Inc., a corporation, and not Zaldo personally. He obtains no standing under this theory.

As an additional theory, Zaldo argues he may recover damages personally because Georganne Apparel Company, Inc. was a close corporation with only three stockholders. He seeks to have Georganne Apparel viewed more as a partnership than a corporation. See *Johnson v. Gilbert*, 127 Ariz. 410, 621 P. (2d) 916 (1980); *Davis v. Hamm*, 300 S.C. 284, 387 S.E. (2d) 676 (Ct. App. 1989). This record does not support application of these principles. Mr. Zaldo did business in the corporate form. He testified the business operated as a corporation. He recognized it was owned by the shareholders. This record does not present a factual scenario sufficient to ignore the corporate nature of Georganne Apparel, Inc.

The decision of the circuit court is reversed and remanded for entry of judgment in favor of Todd. Given our disposition of the primary issue we need not address the question of the excessiveness of the damages.

Reversed and remanded.

GARDNER and BELL, JJ., concur.