IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

THEODORE BOHN VALDEZ, SR., *Plaintiff/Appellee*,

*v.*

RANDY DONOLD DELGADO, *Defendant/Appellant*.

No. 1 CA-CV 18-0537
FILED 9-10-2019

Appeal from the Superior Court in Maricopa County
No. CV2016-005573
The Honorable Kerstin Lemaire, Judge

**AFFIRMED**

COUNSEL

Kutak Rock LLP, Scottsdale
By Douglas H. Allsworth and London A. Burns
*Counsel for Defendant/Appellant*

Jimmy Borunda, Phoenix
*Counsel for Plaintiff/Appellee*

---

**OPINION**

Judge Jennifer M. Perkins delivered the opinion of the Court, in which Presiding Judge Randall M. Howe and Judge David D. Weinzweig joined.

---

**P E R K I N S**, Judge:

¶1        This case requires us to assess the interplay between two standards of review where a legal question is raised on appeal, and reviewed *de novo*, but the answer to the legal question hinges on the factual findings of a jury, which are reviewed for clear error.

¶2        This dispute concerns the part performance exception to Arizona's Statute of Frauds, Arizona Revised Statute ("A.R.S.") section 44-101(6) ("Statute of Frauds"). Theodore Valdez Sr. sued Randy Delgado for breaching an alleged oral agreement to purchase a residence and later convey title to Valdez. Valdez prevailed after a three-day jury trial. The jury found that Valdez and Delgado entered an enforceable oral contract, Valdez satisfied the part performance exception to the Statute of Frauds, and Delgado breached the contract. Delgado unsuccessfully moved for judgment as a matter of law, arguing the alleged contract was unenforceable under the Statute of Frauds. Delgado now appeals the trial court's denial and award of specific performance in favor of Valdez. For the reasons set forth below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3        "We view the facts and the reasonable inferences therefrom in the light most favorable to upholding the jury's verdicts." *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 255, ¶ 3 (App. 2004).

¶4        Valdez and Delgado were friends in 1998 when Delgado offered to assist Valdez in purchasing a home. Valdez learned that his barber was selling a run-down home (the "Property") and told Delgado. Delgado agreed to purchase the Property in 1999 and later convey title to Valdez in 2014 if Valdez contributed $8,000 toward the initial down-payment and paid Delgado $438 per month for fifteen years thereafter. Valdez also agreed to cover all costs for cleanup, materials, and repairs.

¶5        On June 18, 1999, Delgado purchased the Property for $40,000 in cash. Within the month, Valdez cleaned and remodeled the home with

help from family and friends before moving in. In addition to the cleanup, Valdez made a number of improvements to the home in 1999 and 2000 including installing new plumbing; constructing a patio, carport, and porch; and remodeling the bathroom and kitchen. In total, Valdez estimated he spent $12,000 on materials for cleaning up and improving the Property. Valdez testified that he and Delgado agreed that he was purchasing the Property for $8,000 plus $438 per month for fifteen years. Valdez further testified he did not recall any agreement about the rate of interest on the outstanding $32,000, the total amount to be paid over the fifteen-year period, who would pay property taxes, or whether Delgado had lien rights over the Property.

¶6            In contrast, Delgado testified that he purchased the Property for tax purposes and agreed to let Valdez rent the Property. After discussing monthly rent with Valdez, he and Valdez entered into a written month-to-month rental agreement, signed in November 1999, that called for $600 per month in rental payments with Valdez responsible for any repairs under $300. At trial, Valdez testified that he did not remember signing the rental agreement but that it looked like his signature on the agreement. According to Delgado, Valdez complained that $600 per month was too high and the two orally modified the rental payments to $530 per month, which Valdez paid from at least December 1999 through January 2016. Delgado also testified he paid for a new water heater at some point between 1999 and 2016 and agreed to give Valdez $1,200 from his homeowner's insurance on the Property after a hail storm in 2010.

¶7            Seventeen years after the alleged oral agreement, and two years after Valdez should have received title from Delgado under the agreement, Valdez stopped making monthly payments and sued Delgado to quiet title in the Property. Delgado moved for summary judgment under the Statute of Frauds. Valdez countered that the Statute of Frauds was inapplicable under the part performance exception.

¶8            After argument, the trial court denied Delgado's motion for summary judgment, citing Valdez's "apparent reliance on the purchase agreement by making significant repairs, by paying a monthly amount that varied from the amount alleged in the rental agreement, and the potential application of the lost document exception to the statute of frauds." In April 2018, the case proceeded to a three-day jury trial, during which Valdez, Delgado, and four other witnesses testified. At the close of evidence Delgado unsuccessfully moved for judgment as a matter of law. The jury found, by special verdict, that: (1) Valdez paid $8,000 in cash to Delgado in 1999 "as a down payment" for the Property; (2) Valdez made "substantial

repairs and improvements" to the Property "at his sole expense, in reliance on an oral . . . agreement with Defendant Delgado to convey title after 15 years"; (3) Valdez made "15 years of monthly payments to Defendant Delgado in reliance on an agreement of sale"; and (4) Delgado breached a contract to transfer title to Valdez. After the verdict, Delgado renewed his motion for judgment as a matter of law, reiterating the Statute of Frauds arguments made in his motion for summary judgment. The court denied Delgado's motion and he now appeals.

## DISCUSSION

**¶9** We review the trial court's denial of a motion for judgment as a matter of law *de novo*. *Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 580, ¶ 9 (App. 2003). The court may grant a motion for judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for" the non-moving party. Ariz. R. Civ. P. 50(a). The court "may not weigh the credibility of witnesses or resolve conflicts of evidence and reasonable inferences drawn therefrom," but must instead "give full credence to the right of the jury to determine credibility, weigh the evidence, and draw justifiable conclusions therefrom." *McBride v. Kieckhefer Assocs., Inc.*, 228 Ariz. 262, 265, ¶ 11 (App. 2011) (internal quotation marks omitted).

### I.   Waiver

**¶10** On appeal, Valdez first argues that Delgado's Statute of Frauds defense is untimely because it could not be raised for the first time in a post-trial motion for judgment as matter of law under Arizona Rule of Civil Procedure 50. Valdez argues Delgado was required first to raise his defense in a Rule 56 motion for summary judgment. Nothing in Rule 50 requires a prior Rule 56 motion. Moreover, Delgado did, in fact, move for summary judgment before trial, arguing, in part, that the Statute of Frauds barred Valdez's claims. Delgado then properly renewed his argument in a timely Rule 50 motion and preserved it for appeal. *See Desert Palm Surgical Group, P.L.C. v. Petta*, 236 Ariz. 568, 577, ¶ 21–22 (App. 2015) (denial of summary judgment appealable when reasserted in post-trial motion).

### II.   Statute of Frauds

**¶11** The Statute of Frauds prohibits any action to enforce an agreement "for the sale of real property or an interest therein" unless the agreement "is in writing and signed by the party to be charged" or there is a written and signed memorandum of the agreement. A.R.S. § 44-101(6). By its terms, the Statute of Frauds is "absolute." *Owens v. M.E. Schepp Ltd.*

*P'ship*, 218 Ariz. 222, 225–26, ¶ 14 (2008). However, we have long recognized limited exceptions to the Statute of Frauds, including the "part performance" exception derived from equitable estoppel. *Id.* at ¶¶ 14–15.

**¶12** The part performance exception will apply only in very limited circumstances. *See id.* at 225–27, ¶¶ 14–17. Specifically, actions taken by the party arguing part performance will excuse compliance with the Statute of Frauds only "if they cannot be explained in the absence of the contract." *Id.* at 226, ¶ 16. In other words, the acts of performance must be "unequivocally referable" to the agreement such that the acts are "unintelligible or at least extraordinary" in the absence of the purported agreement. *Burns v. McCormick*, 233 N.Y 230, 232 (1922); *see also Gene Hancock Constr. Co. v. Kempton & Snedigar Dairy*, 20 Ariz. App. 122, 125 (1973) (adopting unequivocally referable language), *disavowed on other grounds by Gibson v. Parker Trust*, 22 Ariz. App. 342, 345 (1974). Under Arizona law, the specific acts alleged are not determinative; instead, the acts of part performance must "be consistent only with the existence of a contract and inconsistent with other explanations." *Owens*, 218 Ariz. at 227, ¶ 18. In part, this is because "acts of part performance serve an important evidentiary function—they excuse the writing required by the statute because they provide convincing proof that the contract exists." *Id.* at 226, ¶ 16.

### A. Standard of Review in Cases of Part Performance

**¶13** The application of the doctrine of part performance is a mixed question of fact and law. *See Richard v. Richard*, 900 A.2d 1170, 1174 (R.I. 2006). We review mixed questions of fact and law *de novo*. *Leach v. Reagan*, 245 Ariz. 430, 437, ¶ 27 (2018). While we remain bound by the jury's findings of fact unless they are clearly erroneous, *see, e.g., Parrish v. Camphuysen*, 107 Ariz. 343, 345 (1971), we are not bound by "conclusions of law nor by findings that combine both fact and law," *Wilmot v. Wilmot*, 203 Ariz. 565, 568–69, ¶ 10 (2002) (citation omitted).

**¶14** We have recognized that "[w]hether acts are sufficient to constitute part performance is a question of law, which we review de novo." *Roe v. Austin*, 246 Ariz. 21, 25, ¶ 9 (App. 2018) (citations omitted). Yet, whether particular acts have occurred is a fact determination that we will not disturb unless it is clearly erroneous. *See Parrish*, 107 Ariz. at 345. A factual finding is clearly erroneous only when, considering the totality of the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *State v. Burr*, 126 Ariz. 338, 339 (1980) (citation omitted). Furthermore, we do not reweigh evidence or

credibility determinations on appeal. *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 92, ¶ 36 (App. 1998). This is because credibility determinations are the unique province of the finder of fact. *Estate of Reinen v. Northern Arizona Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12 (2000) (quoting *Kuhnke v. Textron, Inc.*, 140 Ariz. 587, 591 (App. 1984)).

### B.    Valdez's Acts of Part Performance

**¶15**        At trial, Valdez alleged he acted in conformity with a contract for sale of the Property because he took and maintained exclusive possession of the Property; paid $8,000 of the initial purchase price; made monthly payments from 1999 through January 2016; and repaired, improved, and maintained the Property. Delgado countered that Valdez did not pay any of the initial purchase price, was authorized to possess and live at the Property under a contemporaneously executed rental agreement, made monthly rental payments under the rental agreement, was authorized to make repairs and improvements to the Property, and received reimbursement for at least some of the repairs and improvements made on the Property. On appeal, Delgado challenges the factual findings of the jury, particularly as to whether Valdez paid a down-payment and whether Valdez was reimbursed for repairs and improvements to the home. As detailed *supra* at ¶ 8, the jury found that Valdez paid $8,000 in 1999 as a down-payment, made improvements to the Property at his expense, and made monthly payments over fifteen years in reliance on a contract for sale. Reasonable evidence supports these findings and we will not overturn them. *Parrish*, 107 Ariz. at 345.

**¶16**        Delgado also challenges the application of the part performance exception to the Statute of Frauds. Valdez's down payment and substantial improvements to the property totaled 50% of the home's $40,000 purchase price and, under the circumstances, are inexplicable absent a contract for sale. Thus, Valdez's acts alone were sufficient to constitute part performance and avoid the Statute of Frauds. *See Owens*, 218 Ariz. at 226–27, ¶¶ 16–18 (acts of part performance which are consistent only with the existence of the alleged contract will permit relief despite the Statute of Frauds). Accordingly, we affirm the trial court's denial of Delgado's motion for judgment as a matter of law.

### III.    Specific Performance

**¶17**        Delgado also argues that, even assuming Valdez can prevail under the part performance doctrine, specific performance is inappropriate. Delgado contends that the alleged oral contract was missing terms that

preclude specific performance. Delgado is correct in part. Valdez and Lisa Wilkins, Valdez's live-in girlfriend in 1999, testified that they were uncertain of terms typically included in a contract for the sale of real property, including provisions for property taxes and interest on the $32,000 mortgage. Specific performance is often the appropriate remedy to enforce the sale of property if the terms of the agreement are definite. *Daley v. Earven*, 131 Ariz. 182, 185 (App. 1981). But only essential terms need to be definite. *See Suttle v. Seeley*, 94 Ariz. 161, 164 (1963) (in a contract for the sale of land where "the property [is] described in particular, and a selling price [is] agreed upon" the contract need not include every conceivable term to grant specific performance). Here, the essential terms are the price and the specific Property. Valdez has already paid the purchase price of the Property in the form of $8,000 plus fifteen years of $530 monthly payments and it is undisputed that the alleged agreement refers to the Property. Thus, the missing terms Delgado points to are non-essential because Valdez is seeking the transfer of the Property in exchange for his completed payment of the purchase price.

¶18        Delgado additionally argues that Valdez's testimony was insufficient, not credible, and contradictory, and thus cannot support the trial court's order for specific performance. But, as discussed *supra* at ¶14, we do not reweigh the jury's credibility determinations. *Kuhnke*, 140 Ariz. at 591. Finally, Delgado argues that Valdez had adequate alternative remedies such that specific performance should not have been granted. "Specific performance is ordinarily available to enforce contracts for the sale of real property because land is viewed as unique and an award of damages is usually considered an inadequate remedy." *Woliansky v. Miller*, 135 Ariz. 444, 446 (App. 1983) (citation omitted). Moreover, our supreme court has previously recognized that specific performance "is sometimes required to prevent [the Statute of Frauds] from becoming 'an instrument by which fraud is perpetrated.'" *Owens*, 218 Ariz. at 225–26, ¶ 14 (quoting *Trollope v. Koerner*, 106 Ariz. 10, 16 (1970)). Valdez, at the time he filed the underlying suit, had been living at the Property for almost seventeen years, had made substantial improvements to the Property, and had paid substantially more than the purchase price. Given the jury's findings regarding the disputed acts of part performance, the trial court did not abuse its discretion in ordering specific performance.

### CONCLUSION

¶19        Based on the foregoing, we affirm the trial court's denial of Delgado's motion for judgment as a matter of law and the trial court's order of specific performance in favor of Valdez. Valdez requests his costs and

attorneys' fees on appeal under A.R.S. § 12-341.01(A). In our discretion we grant Valdez's costs and reasonable fees upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA